**U.S. DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ARROWOOD INDEMNITY COMPANY ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.:** |
| **v.** ) | **20-** |
| ) | |
| **THE TOWN OF WAKEFIELD and THE** ) | |
| **WOODS, LLC.** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR DECLARATORY RELIEF

### I.  PRELIMINARY STATEMENT

1.      This Complaint for Declaratory Relief seeks a determination of the rights and responsibilities of the parties pursuant to certain policies of insurance issued by the Plaintiff's predecessors to the Town of Wakefield as regards environmental liability claims that have been brought against the Town by The Woods, LLC.

### II.  THE PARTIES

2.      Arrowood Indemnity Company is an insurance company incorporated in the State of Delaware that maintains a principal place of business at 3600 Arco Corporate Drive in Charlotte, North Carolina.

3.      The Town of Wakefield is an incorporated municipality located north of Boston in Middlesex County.

4.      The Woods LLC is a limited liability company that was organized in Massachusetts for the purpose of developing property acquired by The Woods LLC at 94 Butler Avenue in Wakefield.  Upon information and belief, none of its members are domiciled in North Carolina.

1

### III. JURISDICTION AND VENUE

**5.**     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 et seq. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is a complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

**6.**     Venue is proper in this judicial district and division because defendants are both located here and because the matter that is the subject of the declaration is pending in the Middlesex Superior Court, which is within this District.

### IV.  STATEMENT OF THE CLAIM

**Statement of the Facts**

**7.**     In September 2017, The Woods LLC purchased a tract of land located at 94 Butler Avenue formerly known as "the Butler Property for the purpose of converting it into a sixteen unit apartment building.

**8.**     The Woods LLC was aware when it purchased this property that there was some soil contamination that would need to be remediated before the land could be developed; however it claims to have been unaware of the extent of asbestos contamination on the property.

**9.**     After high levels of asbestos were discovered on the Butler Property, counsel for The Woods LLC issued a demand letter to the Town of Wakefield's Board of Selectmen on December 28, 2017 seeking relief under Massachusetts General Laws Chapter 21E, Section 4A.[1]

**10.**     This demand letter asserted on page one that:

---

[1] A copy of this December 28, 2017 letter is attached as Exhibit A to this Complaint.

> In 1972, the Town of Wakefield (the "Town") dumped at the Property solid waste and fire/demolition debris from the High School/Atwell Building, which was destroyed by fire in late 1971. As a result, The Woods will be required to perform extensive environmental response actions to address and remediate the solid waste and hazardous materials (the "Contamination") dumped by the Town in accordance with the regulatory requirements (the "Response Actions").

11.     The December 28, 2017 letter set forth a detailed description of the events leading up to the Town's disposal of construction debris on the Butler Property in 1972 and states that "The Town arranged for the fire and demolition debris from the Atwell Building to be dumped at a low lying area on the Property, then owned by Harold Butler."  (Letter, page 3).   The letter goes on to state (page 3) that "numerous truckloads of debris were transported for dumping at the Property.  This all would have been done under the direction of the Town's Department of Public Works."

12.     The December 28, 2017 letter contended (page 6) that "the presence of asbestos in soil dramatically increased the scope and cost of the Response Actions from what had been anticipated" and would likely add one to two million dollars to the cost of the cleanup.

13.     When discussions between The Woods LLC and the Town of Wakefield failed to yield an agreement, The Woods LLC filed suit against the Town of Wakefield in the Middlesex Superior Court on November 1, 2019 (The Woods LLC v. The Town of Wakefield, Civil Action No. 1981 CV03208) (hereafter "The Woods Suit").[2]

14.     Additional sampling following The Woods' purchase identified the presence of asbestos in soil samples throughout the site that has significantly complicated the proposed remediation strategy and made it more expensive.

---

[2] A copy of this Complaint is attached hereto as Exhibit B.

15.    The Woods alleges that it will be required to dispose of 25,500 tons of soil at out-of-state landfills that are licensed to accept asbestos.

16.    The Woods Suit demands payment for $3.6 million in remedial costs that it claims to have incurred or may incur in the future with respect to the remediation of environmental contamination on the Butler Property that it owns in Wakefield, Massachusetts.

17.    The Woods Suit seeks recovery on three theories of liability:  Count One seeks recovery for a private right of action under Section 4 of Chapter 21E.  Count Two alleges that the plaintiff has also incurred property damage caused by the Town's dumping of the Atwell Building fire/demolition debris at the Property and by its loss of use of Property, including the ongoing mortgage payments, taxes, insurance and other caring costs for the Property, and diminution of the value of the Property.  Finally, Count Three seeks an award of attorneys' fees pursuant to Section 15 of Chapter 21E which provides for recovery by Massachusetts residents who seek to enforce the requirements of the statute.

18.    The Town of Wakefield has asked Arrowood Indemnity to provide a defense to The Woods pursuant to several insurance policies that were or alleged to have been issued to it in the past by various predecessors of Arrowood Indemnity as follows:

Royal and Sun Alliance policies:

*General Liability Policies*

Policy numbers PYAD73725 (effective 7/1/84-7/1/87); PYAL32542 (effective 7/1/88-8/1/89); PYAB70739 (effective 7/1/82-7/1/83); PYA172109 (effective 1983); PYU101415 (effective 7/1/89-7/1/90); PSV007375 (effective 7/1/91-7/1/92)

*Standard Fire and Scheduled Property/Buildings Policies*

Policy numbers PKF502604 (effective 1977); PQS125801 (effective 1977); PKF588101 (effective 1981); PYA172109 (effective 1983); ASP114670 (effective 7/1/00-7/1/01);

4

Royal Globe policy: KF 563311 (effective 1977);

Liverpool & London & Globe Ins. Co. Ltd policy: Building policy
(effective to March 1, 1972).

19.     On February 7, 2020, Arrowood advised counsel for The Town that it will pay for its insured's defense but was reserving its rights as to whether it actually owes coverage, including the right to bring an action for a declaration that it does not owe coverage for The Woods claims.

**The Arrowood Insurance Policies**

20.      As detailed below, various corporate predecessors of Arrowood Indemnity have issued insurance policies to the Town of Wakefield over the years.

21.     Royal & Sun Alliance and the Royal Insurance Company of America issued policies providing commercial general liability (hereafter "CGL") insurance to the Town of Wakefield under policies that were successively in effect from July 1, 1982 to July 1, 1994.[3]

22.     Royal & Sun Alliance issued Policy No.  PYAB70739 for the period July 1, 1982 to July 1, 1983.

23.     Royal Insurance Company of America issued Policy No.  PYAB70739 for the period July 1, 1983 to July 1, 1984.

24.     Royal Insurance Company of America issued Business Comprehensive Policy No.  PYAD73725 for the period July 1, 1984 to July 1, 1987.

25.     Royal & Sun Alliance issued Policy No.  PYAL32542 for the period July 1, 1987 to July 1, 1988.

---

[3] These policies, which are already in the possession of the Town's counsel, are very bulky and contain numerous sections (*i.e.* commercial crime coverage) that have nothing to do with this dispute.  In the interests of clarity, only the Declarations Pages and relevant exclusions for each policy are included in Exhibit C.

5

26.     Royal & Sun Alliance renewed Policy No. PYAL32542 for another year on July 1, 1988.

27.     Royal & Sun Alliance issued Policy No.  PYAL32542 for the period July 1, 1988 to July 1, 1989.

28.     Royal & Sun Alliance issued Policy No.  PYA101415 for the period July 1, 1989 to July 1, 1990.

29.     Royal Indemnity Company issued Policy No.  PSV007375  0090 for the period July 1, 1990 to July 1, 1991.

30.     Royal Insurance Company of America issued Policy No.  PSV007375  0091 for the period July 1, 1991 to July 1, 1992.

31.     Royal Insurance Company of America issued Policy No.  PSV007375  0092 for the period July 1, 1992 to July 1, 1993.

32.     Royal Insurance Company of America issued Policy No.  PSV007375  0093 for the period July 1, 1993 to July 1, 1994.

33.     Under the terms of the CGL policies listed in Paragraphs 22-28 and that were in effect between 1982 and 1990, these insurers agreed to provide insurance coverage pursuant to the following Insuring Agreement

> **I.     COVERAGE A — BODILY INJURY**
> **COVERAGE B — PROPERTY DAMAGE**
>
> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> A.     **bodily injury;** or
> B.     **property damage**
>
> to which this insurance applies, caused by an **occurrence**. The company shall have the right and duty to defend any suit against the **insured** seeking damages

on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

34.     For those policies listed in Paragraphs 29-32 and that were in effect between 1990 and 1994, these insurers agreed to provide insurance coverage pursuant to the following Insuring Agreement

**SECTION I -- COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement.**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "b**odily injury" or "property damage"** to which this insurance applies. No other obligation or liability to pay  sums or preform acts or services is covered under explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.  This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" and ":property damage" must be caused by an "occurrence."  The "occurrence" must take place in the "coverage territory."  We will have the right and duty to defend any "suit" seeking those damages. But:

(1)     The amount will be pay damages is limited as described in SECTION III – LIMITS OF INSURANCE.

(2)      We may investigate and settle any claim or "suit" at our discretion.

(3)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlement under

7

Coverage A or B or medical expenses under Coverage C….

35.   Those terms that are highlighted in the policy have specific definitions as set forth in Section V:

--**Occurrence** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured.**

--**Property Damage** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefore, or (2) loss of use of tangible property which has not been physically injury or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

--**Suit** means "a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged.  "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

36.   Each of these policies contains language excluding coverage for certain types of environmental liability claims.

37.    The policies issued between July 1, 1982 and July 1, 1990 contained the following Exclusion F in the main body of the policy, stating that the policy did not apply:

(f)   to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the ground, water or atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

38.   Beginning with the issuance of Policy No. PSV 00 73 75 on July 1, 1990, a revised pollution exclusion was substituted for this earlier "sudden and accidental"-type form.

39.   As revised, Exclusion F stated that the policy does not apply to

(1)    "bodily injury" or property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a)    at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b)    at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)    which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible…

    d)    at or from any premises, site or location on which any insured or any contract or subcontractors working directly or indirectly on the insured's behalf are performing operations:

        (1)    if the pollutants are brought on to the premises, site or location in connection with such operations by such insured, contractor or subcontractor or

        (2)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants…

(2)    Any loss, cost or expenses arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any respond to or assess pollutants

Pollutants many any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditions or reclaimed.

40.    Section 2 of this pollution exclusion was modified slightly when this coverage was renewed on July 1, 1991.  Whereas Section 2 in the 1990 policy only applied to

governmental directions to clean up property, the revised section in the 1991-94 policies that there is also no coverage for:

> (2)    any loss, cost or expense arising out of any:
>
>> (a)    request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or
>>
>> (b)    claim pursued by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

41.    Beginning with Policy No.  PYA101415 on July 1, 1989 and continuing through July 1, 1994, the Royal Indemnity Company and Royal Insurance Company of America policies were also endorsed to include an "Absolute Asbestos Exclusion"  which states that:

> In consideration of the premium charged, it is agreed that the insurance provided by this policy shall not apply to any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos or any product containing asbestos.
>
> It is further agreed that we shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded.

42.    In addition to these general liability insurance policies, certain affiliates of Arrowood Indemnity issued commercial property insurance policies and other policies to the Town of Wakefield insuring the Town's buildings and facilities against the risk of fire and other natural causes.

43.    The Town alleges that it was insured by the Liverpool & London & Globe Insurance Company under a first party property policy that expired on March 31, 1972.

44.    Plaintiff has, to date, been unable to confirm the existence or terms of this claimed policy.

45.     The Town alleges that it was insured in 1977 by Policy No. "PKF502604" by the Royal Globe Insurance Company that provided first party insurance for various scheduled municipal properties of the Town.  During this period, the Town also alleges that it had first party property insurance with Royal Globe pursuant to Policy No. PQS125801.

46.     The Town alleges that it was insured in 1981 by Policy No. "PKF588101" by the Royal Globe Insurance Company that provided first party insurance for various scheduled municipal properties of the Town.

47.     The Town alleges that it was insured in 1983 by Policy No. "PYA172109" by the Royal Insurance Company that provided first party insurance for various scheduled municipal properties of the Town.

48.     The Town alleges that it was insured between July 1, 1988 and July 1, 1989 pursuant to Policy No. "PYAL25452" that was issued by the Royal Insurance Company to provide first party insurance for various scheduled municipal properties of the Town.

49.     The Town alleges that it was insured between July 1, 2000 and July 1, 2001 pursuant to Policy No. "ASP114670" that was issued by the American and Foreign Insurance Company to provide first party insurance for various scheduled municipal properties of the Town.  The Declarations page for this policy states "COMMERCIAL LIABILITY COVERAGE PARTS:  NOT COVERED."

50.     Upon information and belief, all of these policies provided only "first party" insurance for damage to the Town's own property; none of these policies provide liability insurance for claims against the Town by third parties.

51.     Upon information and belief, none of these policies contain "duty to defend" language such as that referenced above in the context of the Town's CGL forms.

52.     Arrowood Indemnity has disclaimed coverage for The Woods claims against the Town, since the policies do not provide coverage for liability claims, nor was the "Butler Property" ever owned by the Town of Wakefield or among the scheduled locations for which first party insurance was provided under these policies.

## V.  CLAIMS FOR DECLARATORY RELIEF

### COUNT I
### (No "Occurrence")

53.     Arrowood Indemnity, realleges and incorporates by reference the allegations contained in paragraphs 1-52 of its Complaint as if fully set forth herein.

54.     In order for the Plaintiff's CGL Policies to be triggered, the alleged third party's property damage must have resulted from an "occurrence."

55.     The subject policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

56.     The property damage claimed by The Woods LLC due to the intentional disposal of construction debris at the Butler Property was not an "accident."

57.     The environmental contamination alleged by The Woods LLC as the result of disposing of construction debris containing asbestos and other contaminants and hazardous substances was expected or intended from the standpoint of the insured and therefore not an "occurrence."

WHEREFORE, no basis exists for finding coverage for The Woods LLC's claims under any of the general liability insurance policies listed in Paragraphs 22-32 above that were issued to the Town of Wakefield by Arrowood Indemnity's predecessor companies.

### COUNT II
### (Trigger of Coverage)

58.    Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1-52 of its Complaint as if fully set forth herein.

59.    In order for there to be coverage under any of the general liability insurance policies listed in Paragraphs 22-32 above that were issued to the Town of Wakefield by Arrowood Indemnity's predecessor companies, the "property damage" for which The Woods LLC seeks damages must have occurred during the policy period.

60.    Accordingly, there is no basis for these claims insofar as any "property damage" is shown to have commenced on or after the expiration of the last policy on July 1, 1994.

WHEREFORE, no basis exists for finding coverage for The Woods LLC's claims under any of the general liability insurance policies listed in Paragraphs 22-32 above that were issued to the Town of Wakefield by Arrowood Indemnity's predecessor companies insofar as these claims are based on pollution that began after these policies expired.

## COUNT III
### ("Sudden and Accidental"-Type Exclusion)

61.    Arrowood Indemnity, realleges and incorporates by reference the allegations contained in paragraphs 1 - 52 of its Complaint as if fully set forth herein.

62.    The general liability policies issued to the Town of Wakefield between July 1, 1982 and July 1, 1990 and that are identified above in Paragraphs 22-28 all contained an exclusion stating that the policy did not apply:

> (f)    to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the ground, water or atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

63.     The intentional disposal of construction debris and other waste materials on the Butler Property was not "accidental.'"

64.     The dumping of waste materials on the Butler Property during the Spring and Summer of 1972 did not occur suddenly.

65.     Despite numerous opportunities, the Town of Wakefield has failed to present evidence to Arrowood Indemnity that the source of this pollution was a "sudden and accidental" discharge.

WHEREFORE, Arrowood Indemnity seeks a declaration that any coverage that might otherwise apply to The Woods LLC claims pursuant to the 1982-1990 CGL policies identified in Paragraphs 22-28 above are excluded by operation of Exclusion F.

## COUNT IV
### ("Absolute" Pollution Exclusion)

66.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1 - 52 of its Complaint as if fully set forth herein.

67.     The 1990-1994 CGL policies issued to the Town of Wakefield that are identified in Paragraphs 29-32 supplanted the "sudden and accidental" version of Exclusion F with new wording that stated in Section I that the policies did not apply to:

> (1)     "bodily injury" or property damage" arising out of the actual, alleged or discharge, dispersal, seepage, migration, release or escape of pollutants:
>
>     (a)     at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
>
>     (b)     at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)     which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible…

d)     at or from any premises, site or location on which any insured or any contract or subcontractors working directly or indirectly on the insured's behalf are performing operations:

(1)     if the pollutants are brought on to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

(2)     if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

68.     Any property damage that is alleged to have occurred on the Butler Property between July 1, 1990 and July 1, 1994 arose out of the actual, alleged or discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

69.     Any property damage that is alleged to have occurred on the Butler Property between July 1, 1990 and July 1, 1994 arose out of the actual, alleged or discharge, dispersal, seepage, migration, release or escape of pollutants which are or were at any time transported, handled, stored, treated, disposed of or processed as waste" by or for the Town or Wakefield or any person or organization for whom it may be legally responsible…"

70.     Any property damage that is alleged to have occurred on the Butler Property between July 1, 1990 and July 1, 1994 arose out of the actual, alleged or discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location on which any insured or any contract or subcontractors working directly or indirectly on the

insured's behalf are performing operations" because in this case the construction debris from the Atwell Building was brought to the Butler Property by a contractor that was hired by the Town of Wakefield in 1972 for the express purpose of transporting these waste materials in connection with said operations.

71.     In addition to Section 1, Section 2 of the policies issued to the Town of Wakefield by the Royal Indemnity Company of America between July 1, 1991 and July 1, 1994 that are identified in Paragraphs 30-32 above, stated in Section 2 of this exclusion that there was no coverage for:

      (2)    Any loss, cost or expenses arising out of any:

           (a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any respond to or assess the effects of pollutants; or

           (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

72.     In light of this language, there is also no coverage for The Woods LLC claims for the 1991-94 policies as these claims arise out of any "request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any respond to or assess the effects of pollutants."

73.     As to the general liability policies issued to the Town of Wakefield between 1991 and 1994 that are identified in Paragraphs 30-32 above, there is no coverage for The Woods LLC claims against the Town of Wakefield for "any loss, cost or expense arising out of any claim pursued by or on behalf of a governmental authority for damages because of testing

for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants."

WHEREFORE, Arrowood Indemnity seeks a declaration that the Town of Wakefield is not entitled to coverage under the 1990-1994 general liability policies identified in Paragraph 29-32 above because of the modified pollution exclusion contained in those policies.

## COUNT V
### (Asbestos Exclusion)

74.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1 - 50 of its Complaint as if fully set forth herein.

75.     Beginning with Policy No.  PYU101414 on July 1, 1989 and continuing through July 1, 1994, the Royal Indemnity policies were contained an endorsement excluding coverage for certain asbestos liabilities (Form GC 00 01 01 87) which states that:

> In consideration of the premium charged, it is agreed that the insurance provided by this policy shall not apply to any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos or any product containing asbestos.

> It is further agreed that we shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded.

76.     In light of this exclusion, the CGL policies issued between 1991 and 1994 that are identified in Paragraphs 29-32 above do not provide coverage for any damages claimed or recoverable by The Woods LLC by reason of presence of asbestos on the Butler Property.

WHEREFORE, Arrowood Indemnity seeks a declaration that these claims are excluded in whole or in part pursuant to Exclusion L.

## COUNT VI
### (Scope of the Duty to Defend)

77.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1-52 of its Complaint as if fully set forth herein.

78.     Pursuant to the terms of these liability insurance policies, Arrowood's predecessors agreed to

> …pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury or (B) property damage to which this insurance applies, caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage…

79.     There is no legal obligation under these policies to reimburse the insured for legal fees for responding to claims that are not yet in suit.

80.     The obligation imposed by this insuring agreement is to "defend;" there is no contractual obligation to pay for the prosecution of the insured's own claims.

WHEREFORE, Arrowood Indemnity seeks a declaration that any obligation that it may be adjudged to owe is limited to the reasonable costs of defense incurred from the date that The Woods filed suit against the Town of Wakefield.

## COUNT VII
### (Missing Policies)

81.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1 - 52 of its Complaint as if fully set forth herein.

82.     As the party seeking coverage under the policies actually or allegedly issued by Arrowood Indemnity's predecessors, the Town of Wakefield has the burden of proving that said policies were actually issued and contain coverages applicable to The Woods LLC claims.

83.     No basis for coverage exists under any policy that the Town of Wakefield cannot prove was issued or that is incomplete or otherwise provides a type of coverage that is clearly inapplicable to The Woods LLC liability claims.

WHEREFORE, Arrowood Indemnity seeks a declaration that no coverage exists under any missing, incomplete or inapplicable policy.

### COUNT VIII
### (Pro Rata Allocation)

84.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1 - 52 of its Complaint as if fully set forth herein.

85.     Insofar as The Woods LLC claims are found to seek damages on account of property damage that occurred before, during and/or after the period of time that coverage is found to apply under one of more of the insurance policies issued to the Town of Wakefield by Arrowood Indemnity's predecessors, any coverage obligations arising under those policies must be pro-rated to reflect the loss that occurred during the policy term as a percentage of the overall period of property damage (*ie.* "time on the risk").

WHEREFORE, Arrowood Indemnity seeks a declaration that any coverage obligations that it otherwise may be found to owe should be pro-rated to reflect its actual "time on the risk" in this case.

### COUNT IX
### (First Party Insurance Policies)

86.     Arrowood Indemnity realleges and incorporates by reference the allegations contained in paragraphs 1-52 of its Complaint as if fully set forth herein.

87.     As recited in Paragraphs 41-47 above, in addition to the CGL insurance policies issued to it between 1982 and 1994, the Town of Wakefield claims that The Woods LLC

claims may be covered under certain first party policies that provide for fire and other risks to municipal buildings.

88.     There is no coverage for said claims insofar as these policies are missing.

89.     There is no coverage for said claims because these policies are for losses that the Town suffered because of its own property and therefore do not apply to a liability claim brought against it by a third party for damage to property that was never owned by the Town of Wakefield.

90.     There is no coverage for said claims because these policies do not contain any "duty to defend" provision for the defense of law suits against the insured, as in this case.

WHEREFORE, Arrowood Indemnity seeks a declaration that the Town of Wakefield is not entitled to coverage for these claims under the first party property insurance policies that are identified in Paragraph 41-47 above.

**WHEREFORE**, the Plaintiff Arrowood Indemnity Company respectfully requests that this Honorable Court declare and adjudicate the rights, duties and responsibilities of the parties under the terms and provisions of its predecessors' policies and issue a judicial declaration that these policies do not provide coverage for claims that have been brought against the Town of Wakefield by The Woods LLC and that it has neither a duty to defend the Town of Wakefield nor a duty to indemnify it for any settlement or judgment for The Woods LLC that may result from said claims and for other and further relief as this Honorable Court deems just and proper.

PLAINTIFF,
**ARROWOOD INDEMNITY COMPANY**

By:  /s/ Michael Aylward
         Michael F. Aylward, BBO #024850
         **MORRISON MAHONEY LLP**
         250 Summer Street
         Boston, MA  02210
         Tel: (617) 439-7556
         Fax: (617) 342-4913
         *maylward@morrisonmahoney.com*

Dated:  April 13, 2020